# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLOMBIA

|  |  |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| ) | |
| PEDRO DAVID GALLON HENAO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:18-cv-_____-____ |
| ) | |
| STEVEN TURNER MNUCHIN, ) | |
| in his official capacity as ) | |
| Secretary of the Department of the Treasury, ) | **COMPLAINT** |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | **ECF Case** |
| ) | |
| THE UNITED STATES DEPARTMENT ) | |
| OF THE TREASURY, OFFICE OF FOREIGN ) | |
| ASSETS CONTROL, ) | |
| ) | |
| Defendant, ) | |
| and ) | |
| ) | |
| JOHN E. SMITH, ) | |
| In his official capacity as ) | |
| Director Office of the Office of Foreign Assets ) | |
| Control, United States Department of the Treasury ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

Pedro David Gallon Henao ("Plaintiff," or "Mr. Gallon"), through his counsel, David

Zapp, hereby files this complaint (the "Complaint") against Defendants Steven Turner Mnuchin,

in his official capacity as Secretary of the Department of the Treasury, and not personally

("Secretary Mnuchin"), and the United States Department of the Treasury, Office of Foreign

Assets Control ("OFAC"), and John E. Smith ("Director Smith") in his official capacity as

director of the Office of Foreign Assets Control, United States Department of the Treasury, and

not personally.  In further support of this Complaint, Mr. Gallon alleges as follows:

## Introduction

1.      This lawsuit arises from defendant OFAC's wrongful and improper decision on June 24, 2016 to designate Mr. Gallon as a Specially Designated Narcotics Trafficker (SDNTK) under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. §§ 1901-1908, and OFAC's simultaneous placement of Mr. Gallon on the list of Specially Designated Nationals and Blocked Persons (the "SDN List"); and OFAC's delay, failure and refusal to decide whether to grant Plaintiff's request for reconsideration of such designation and removal from the SDN List.

2.      On June 24, 2015, OFAC designated Plaintiff as an SDNTK and placed him on the SDN List.[1]

3.      As part of its justification for designating Plaintiff as an SDNTK and placing him on the SDN List, OFAC accused Plaintiff of materially aiding La Oficina de Envigado ("La Oficina"), a drug cartel and criminal organization founded as an enforcement and collections arm of the Medellin Cartel in Colombia.[2]

4.      As a result of being placed on the list, all of Plaintiff's assets, property and interests in the United States or under the control of any person or business entity who is in the United States, had there been any, would have been immediately blocked, *i.e.*, frozen. Furthermore, citizens or residents of the United States are now barred from engaging in virtually all transactions with Plaintiff.

---

[1]      *Press Release*, "Treasury Designates Criminal Financiers, Drug Traffickers, Collaborators, and a Company Aligned with Colombia's La Oficina de Envigado," U.S. Dept. of the Treasury, June 24, 2015, available at https://www.treasury.gov/press-center/press-releases/Pages/jl0089.aspx.

[2]      OFAC designated La Oficina as an SDNT on June 26, 2014.

5.      Subsequent to OFAC placing Plaintiff on the SDN List as an SDNTK, Plaintiff drafted letters seeking OFAC's administrative record (the "Administrative Record") and provided answers to OFAC's questionnaires regarding his knowledge of or connections with various Colombian individuals or entities.

6.      As early as March 11, 2016, Plaintiff had submitted a formal administrative request for reconsideration of his designation as an SDNTK.  That request was made pursuant to OFAC's delisting procedures set forth in 31 C.F.R. § 501.807.

7.      On March 14, 2017, Plaintiff submitted a supplemental formal administrative request for reconsideration of his designation as an SDNTK.  That request also was made pursuant to OFAC's delisting procedures set forth in 31 C.F.R. § 501.807.

8.      In response, OFAC sent yet another questionnaire to Plaintiff, which he immediately completed and submitted to OFAC.

9.      As of the date of this Complaint, OFAC has acted in an arbitrary and capricious manner by refusing or failing to render a decision regarding whether to accept Plaintiff's request to be removed from the SDN List and have his designation as an SDNTK rescinded.  Due to OFAC's continued refusal to render any decision whatsoever regarding Plaintiff's delisting requests, Plaintiff cannot bring property and interests in property into the United States jurisdiction or they will be immediately blocked, and he remains prohibited from engaging in virtually all transactions with United States persons.[3]

---

[3]      For purposes of the Kingpin Act's implementation regulations, the Foreign Narcotics Kingpin Sanctions Regulations ("FNKSR"), U.S. persons are defined as any United States citizen or national, permanent resident alien, an entity organized under the laws of the United States (including its foreign branches), or any person within the United States).  *See* 31 C.F.R. § 598.318.

10.     As a result of OFAC's June 24, 2015 designation and ongoing refusal or failure to render a decision on his request for reconsideration, Mr. Gallon, his family, and his businesses continue to suffer substantial economic harm.

11.     As a result of OFAC's June 24, 2015 designation and ongoing refusal or failure to render a decision on his request for reconsideration, Mr. Gallon has suffered irreparable harm to his overall state of health, including irreversible psychological injuries and emotional distress.

12.     As a result of OFAC's June 24, 2015 designation and ongoing refusal or failure to render a decision on his request for reconsideration, Mr. Gallon and his family continue to experience onerous obstacles in their day to day lives, including the tarnishing of his and his family's reputations within Colombia, its business and financial communities, and its society.

13.     Through this action, Plaintiff seeks rescission of OFAC's designation, blocking notice, and all resulting sanctions, because the initial June 24, 2015 designation, and OFAC's ongoing refusal or failure to render a decision on his request for reconsideration constitutes an arbitrary and capricious final agency action, based on unreasonable delay and an unreasonable dearth of evidentiary support in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; 5 U.S.C. §§ 706(1) (stating that a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed); 551(13) (defining agency action to include "failure to act").

14.     OFAC's June 24, 2015 designation of Plaintiff as an SDNTK, and placement on the SDN List, was arbitrary and capricious, abuse of discretion and not otherwise authorized by law because, upon information and belief, it was not based upon evidence linking Plaintiff to the gravamen of the offense, i.e., helping "la ofcina de envigado".

15.     Moreover, OFAC relied on insufficient evidence and an unsound factfinding expedition, where bits and pieces of already dubious new sources are asserted and fallaciously

interpreted as part of the agency's arbitrary and unsupported conclusions, abuse of discretion and unlawful determination concerning Plaintiff.

16.     The failure and/or refusal to render the decision on Plaintiff's request for reconsideration for over two years is an unreasonable delay further evidence of arbitrary and capricious behavior by the OFAC particularly as there is no evidence within the two and half years the request has been pending linking Plaintiff to the gravamen of the offense.

17.     In light of the foregoing, Plaintiff hereby files this Complaint against OFAC, Secretary Mnuchin, and Director Smith, and petitions this Court to issue a declaratory judgment, injunctive relief, and/or writs of mandamus, with respect to OFAC's June 24, 2015 initial designation of Plaintiff as an SDNTK, placement on the SDN List, and OFAC's subsequent refusal or failure to render any decision on Plaintiff's repeated requests for reconsideration, constitutes an arbitrary and capricious final agency action, based on unreasonable delay and an unreasonable dearth of evidentiary support in violation of the Administrative Procedure Act, and is tantamount to a denial of Plaintiff's request.

## The Parties

18.     Plaintiff is a Colombian businessperson who was designated as a Specially Designated Narcotics Trafficker (with the designation tag, "SDNTK") under the Kingpin Act on or about June 24, 2015, and whose name was included on the SDN List maintained and administered by OFAC.  Attached hereto as Exhibit A is a true and correct copy of the SDN List containing Mr. Gallon's name.[4]

19.     Plaintiff is and was at all times mentioned herein a citizen of Colombia.  Plaintiff currently resides in Antioquia, Colombia.

---

[4]  Counsel has not provided the entire SDN List because the list is over 1,070 pages.  Counsel has provided the specific page of the SDN List in which Plaintiff's name appears.

20.     Defendant OFAC is a United States federal administrative agency located at the United States Department of the Treasury, 1500 Pennsylvania Avenue, NW, Annex, Washington, D.C.  20220.  The United States Department of the Treasury is responsible for the financial and economic security of the United States.  The United States Department of the Treasury is also responsible for overseeing various offices, including OFAC.

21.     Pursuant to the FNKSR, 31 C.F.R. Part 598, the Secretary of the Treasury delegated all of his authority under the Kingpin Act to the Director of OFAC.  *See* 31 C.F.R. § 598.803.  Upon information and belief, both the President of the United States and OFAC are responsible for making decisions regarding placing persons on, and removing persons from, the SDN List under the Kingpin Act.  *See* 21 U.S.C. §§ 1904(b); 1904(c)(1).  Furthermore, upon information and belief, OFAC and certain other federal agencies are responsible for the provision of appropriate and necessary information that may be relied upon by the President in identifying foreign persons that the President determines are appropriate for sanctions pursuant to the Kingpin Act.  *See* 21 U.S.C. § 1903(a).

22.     Defendant Secretary Mnuchin is the Secretary of the Treasury of the United States.  Secretary Mnuchin is sued only in his official capacity.

23.     Defendant Director Smith is the Director of OFAC. Director Smith is sued only in his official capacity.

### Jurisdiction and Venue

24.     This action arises under the Kingpin Act, 21 U.S.C. § 1901 *et seq.*, and the ADA, 5 U.S.C. § 701 *et seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that the

matter in controversy arises under the laws of the United States, and 28 U.S.C. § 1361 (the "Mandamus Act").

25.     This Court may grant declaratory relief pursuant to the Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq*. and Rule 57 of the Federal Rules of Civil Procedure.  This Court may grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) and 5 U.S.C. § 703.

## Regulatory and Statutory Framework

27.     The Kingpin Act was designated to "provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, whose activities threaten the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902.  As such, the Kingpin Act authorizes the President (or OFAC) to impose blocking sanctions on "any significant foreign narcotics traffickers publicly identified" in an annual report that the President submits to specific Congressional committees, or in additional reports to such committees for any foreign persons identified after the annual report as a significant foreign narcotics trafficker.  21 U.S.C. §§ 1903(b), (h)(1), 1904(b)(1) (". . . there are blocked as of such date, and any date thereafter, all such property and interests in property within the United States, or within the possession or control of any United States person . . . .").

28.     The Secretary of the Treasury and the heads of several other federal agencies are entrusted by the Kingpin Act to provide the appropriate and necessary information to enable the

President to submit reports identifying foreign persons as appropriate for sanctions under the Kingpin Act.  *See* 21 U.S.C. § 1903(a).

29.     The Kingpin Act also provides additional authorities to the Secretary of the Treasury, acting in consultation with the heads of several other federal agencies, including the Drug Enforcement Administration and the Secretary of State, to designate "any foreign person . . . materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker"; "any foreign person . . . owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker;" and "any foreign person . . . playing a significant role in international narcotics trafficking."  21 U.S.C. § 1904(b)(2)-(4); 31 C.F.R. § 598.313 (defining "significant foreign narcotics trafficker"); 31 C.F.R. § 598.314 (defining "specially designated narcotics trafficker").  Foreign persons who are so designated are subject to blocking sanctions under the Kingpin Act.  *See* 21 U.S.C. § 1904(b).

30.     The Kingpin Act defines the term "narcotics trafficking" as ". . . any illicit activity to cultivate, produce, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so."  21 U.S.C. § 1907(3).  Furthermore, it defines the term "significant foreign narcotics trafficker" to mean ". . . any foreign person that plays a significant role in international narcotics trafficking, that the President has determined to be appropriate for sanctions pursuant to [the Kingpin Act]."  21 U.S.C. § 1907(7).

31.     Persons designated as SFNTs or SDNTKs under the Kingpin Act are added to the SDN List, 31 C.F.R. § 501.807(a), and all their assets in the United States or under the control of any person who is in the United States are "block[ed]," *id.* § 1904(b), or effectively frozen.

32.    Whenever the President finds that a foreign person that has previously been publicly identified as a SFNT (or SDNTK), no longer engages in narcotics trafficking activities, the President must issue public notice of such a finding and notify certain Congressional committees.  21 U.S.C. § 1903(b)(2).

33.    The Secretary of the Treasury also possesses the authority, pursuant to the Kingpin Act, to revoke, in consultation with the heads of several other federal agencies, those designations he previously authorized pursuant to 21 U.S.C. § 1904(b)(2)-(4).  *See* 21 U.S.C. § 1904(e)(1)(A).

34.    The applicability of sanctions on any foreign person pursuant to the Kingpin Act remain in effect until revoked pursuant to Sections 1903(h)(2) or 1904(e)(1)(A).  *See* 21 U.S.C. § 1904(a).

35.    On July 5, 2000, OFAC issued the FNKSR, 31 C.F.R. Part 598, to implement the Kingpin Act.  Persons designated pursuant to the Kingpin Act, like Plaintiff, are identified by the FNKSR as specially designated narcotics traffickers (SDNTK).  *See* 31 C.F.R. § 598.313 (defining "significant foreign narcotics traffickers"); § 598.314 (defining "specially designated narcotics traffickers").

36.    Parties, like Plaintiff, designated at SDNTKs are included on the SDN List maintained and administered by OFAC.

37.    Parties designated pursuant to the Kingpin Act may contest their designation according to the procedures established by OFAC.  *See* Note 3 to 31 C.F.R. § 598.314.  The procedures governing unblocking and delisting from the SDN List are set forth at 31 C.F.R. § 501.807 ("Procedures governing delisting from the Specially Designated Nationals and Blocked Persons List").  These procedures are applicable "person[s] blocked under the provisions of any

part of this chapter, including a . . . specially designated narcotics trafficker" like OFAC has designated Plaintiff.  31 C.F.R. § 501.807(a).

38.     The regulations provide that a blocked person may seek administrative reconsideration of their designation, and thus seek to have the designation rescinded.  *See id.* at § 501.807.  Blocked persons may either submit arguments or evidence that the person believes establishes that insufficient bases exist for the designation, or propose remedial steps on the person's part, which the person believes would negate the basis for designation.  *See id.* at § 501.807(a).

39.     The information submitted by the blocked person seeking unblocking is reviewed by OFAC, "which may request clarifying, corroborating, or other additional information."  *Id.* at § 501.807(b).  After OFAC has conducted a review of the request for reconsideration, OFAC is required to "provide a written decision to the blocked person . . . ."  *Id.* at § 501.807(d).

40.     Agency actions made reviewable by statute and final agency actions for which there is no other adequate remedy in a court are subject to judicial review.  *See* 5 U.S.C. § 704. Furthermore, pursuant to the APA, "[e]xcept as otherwise required by statute, agency action otherwise final is final for the purposes of [being subject to judicial review under the APA] whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."  *Id.*

41.     The APA instructs that "to the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.

42.     The APA mandates that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."  *See id* § 706(1).  "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*."  5 U.S.C. § 551(13) (emphasis added).

43.     The APA further mandates that a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *See id.* at § 706(2)(A).

44.     The APA also mandates that a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law.  *See id.* at § 706(2)(D).

## Factual and Procedural Background

A. Initial Designation of Plaintiff as a Specially Designated Narcotics Trafficker (SDNTK).

45.     On June 24, 2015, OFAC designated four Colombian nationals, including Mr. Gallon, as specially designated narcotics traffickers (SDNTKs) appropriate for sanctions under the Kingpin Act.[5]  On the same day, OFAC added Mr. Gallon to the SDN List and an SDNTK,[6] and imposed blocking sanctions on Mr. Gallon, including a block on all his property and interests in property within United States jurisdiction or ever brought within such jurisdiction, and further directed that U.S. persons were generally prohibited from engaging in transactions with him.

46.     Based upon the dearth of evidence in the heavily redacted Administrative Record provided to Plaintiff on February 18, 2016, OFAC's initial decision to designate Plaintiff as an

---

[5]     *See supra* note 1.
[6]     U.S. Department of the Treasury, *Recent OFAC Actions*, June 24, 2015, available at https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20150624.aspx.

SDNTK and place him on the SDN List was arbitrary, capricious and/or an abuse of agency discretion.

47.     OFAC's June 25, 2015 designation actions caused Plaintiff, his family, and his businesses substantial economic harm.

B.  Plaintiff's Repeated Requests for Reconsideration of His Designation Pursuant to 31 C.F.R. § 501.807.

48.     Subsequent to OFAC placing Plaintiff on the SDN List, on September 29, 2015 (and again on February 9, 2016), Plaintiff requested a copy of the Administrative Record to review.

49.     On February 18, 2016, OFAC provided the unclassified, non-privileged Administrative Record.  The Administrative Record provided a description of the Colombian drug trade after the fall of Pablo Escobar, the rise of La Oficina and Los Urabenos (via an alliance/truce), and the past and current structure and operatives of those organizations.

50.     The Administrative Record contained no detailed information or other evidence directly related to Plaintiff's participation with or support for La Oficina.  All of OFAC's exhibits, noted as the "Basis for Designation" for Plaintiff (*i.e.*, Exhibits 26-27, 31, and 33-35), were redacted in full.[7]  In conclusory fashion, OFAC's evidentiary memorandum supporting designation stated that Plaintiff, and four others persons who are not parties to this action, "are members of, collaborate directly with, and/or receive services in exchange for providing financial compensation to, LA OFICINA."  Admin. Rec. at FNK-3532 000006.

---

[7]     The Administrative Record consisted of bates stamped pages FNK-3523 000001-000124, which included the substantially redacted Administrative Record upon which his designation was based, the United States Department of the Treasury's press release and press chart, and an unclassified summary of otherwise privileged information regarding the basis for Plaintiff's designation.

51.     On March 11, 2016, Plaintiff submitted a second request to OFAC seeking additional information due to the dearth of information and the conclusory statements contained in the unclassified Administrative Record.  This submission also made a formal request for reconsideration.  Plaintiff urged OFAC to provide additional information that supported his designation as an SDNTK, or to render a decision regarding reconsideration so that Plaintiff would not continue to suffer harm from its refusal or failure to do so.

52.     In response, on March 22, 2016, OFAC informed Plaintiff by email that his request was under review, that the review process can be lengthy, and it was likely that OFAC would seek additional information from Plaintiff before a final determination was made concerning his designation as an SDNTK.

53.     On July 13, 2016 OFAC sent a letter questionnaire to Plaintiff that included a request for information regarding personal identifying data, a description of Plaintiff's relationship with thirty-three (33) individuals and eighteen (18) SDNT companies, an explanation of any seized assets, a description of any financial accounts or real property held in the United States, and an inquiry into narcotics trafficking, money laundering, or legal proceedings involving Plaintiff.

54.     On September 28, 2016, Plaintiff submitted detailed responses, together with numerous exhibits, and a letter memorandum requesting that the OFAC designation be withdrawn or essentially deleted.  Further, this letter also sought administrative reconsideration of his designation as an SDNTK on the grounds that any circumstances that may have led to his initial, and wrongful, designation, no longer applied because any such evidence was both old and stale.

55.     In response, on December 29, 2016, OFAC sent another questionnaire to Plaintiff, seeking additional information.  This letter sought information regarding Plaintiff's current employment and sources of income, his relationship with nine (9) additional SDNT individuals or entities, whether he had engaged in extortion or debt collections, and whether he had engaged in illicit activities with certain SDNT organizations.

56.     On March 14, 2017, Plaintiff submitted yet another letter, together with detailed responses and exhibits, responding directly to the questionnaire in OFAC's December 29, 2016 letter, and supplementing his request for reconsideration.  In this letter, Plaintiff also requested disclosure of classified or redacted information from the Administrative Record, informed OFAC of the serious impact and prejudice that the designation had on Plaintiff, offered to discuss remedial measures recommended by OFAC as a condition for delisting pursuant to 31 C.F.R. § 501.807, and requested an informal meeting between counsel for Plaintiff and OFAC.

57.     On June 22, 2017, OFAC sent yet another questionnaire to Plaintiff, seeking yet more information regarding Plaintiff's connections with or knowledge of certain individuals and companies, including certain members of his brother's family and entities owned or controlled by his brother, Jose Santiago Gallon Henao, and denying Plaintiff's request for an informal meeting.

58.     On July 12, 2017, Plaintiff submitted his most recent letter to OFAC, together with Plaintiff's responses to the June 22, 2017 questionnaire.  In this letter, Plaintiff reminded OFAC that he had provided detailed responses to all of the questionnaires since his SDNTK designation, and believed its inquires must be complete.  Plaintiff informed OFAC that it would not be unreasonable to assume that if he did not receive a decision from OFAC within three

weeks, that OFAC's position with respect to Plaintiff's designation had not changed, and OFAC believed Plaintiff should remain on the SDN List.

59.    OFAC did not respond within three weeks.

60.    As set forth above, during the nearly twenty-seven (27) month period since the initial June 24, 2015 designation, Plaintiff made numerous submissions to OFAC evidencing that an insufficient basis existed for both the initial designation and for the continued designation as an SDNTK.

61.    During this period, OFAC has failed to provide Plaintiff with a copy of a meaningful Administrative Record underlying the designation.  The heavily redacted Administrative Record, in conclusory fashion, simply states that Plaintiff gave La Oficina material support, which is simply a repetition of the allegation reflected in the initial notice that he gave La Oficina material support.  Further, OFAC's only other substantive correspondence with Plaintiff was limited to the three (3) questionnaires set forth above.

62.    OFAC has acted in an arbitrary and capricious manner by refusing or failing to render a decision regarding whether to accept Plaintiff's request to be removed from the SDN List and have his designation as an SDNTK rescinded.  Due to OFAC's ongoing refusal to render any decision whatsoever regarding Plaintiff's delisting requests, Plaintiff cannot bring property or interests in property into the United States jurisdiction without them being blocked, and he remains prohibited from engaging in virtually all transactions with United States persons, causing substantial harm to him, his family, and his businesses.[8]

---

[8]    For purposes of the Kingpin Act's implementation regulations, the Foreign Narcotics Kingpin Sanctions Regulations ("FNKSR"), U.S. persons are defined as any United States citizen or national, permanent resident alien, an entity organized under the laws of the United States (including its foreign branches), or any person within the United States).  *See* 31 C.F.R. § 598.318.

## Causes of Action

### *Count I* - OFAC's June 24, 2015 designation of Plaintiff as a Specially Designated Narcotics Trafficker (SDNTK) under the Kingpin Act was an arbitrary and capricious action, an abuse of discretion, and not in accordance with law under the APA and must be set aside.

63.     Plaintiff realleges and fully incorporates by reference the allegations contained in paragraphs 1-61 above.

64.     OFAC's June 24, 2015 decision to designate Plaintiff as an SDNTK and place him on the SDN List was a final agency action under 5 U.S.C. § 704.

65.     The Court may hold unlawful and set aside agency action, findings, and conclusions found to be ". . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ."  5 U.S.C. § 706(2)(A).

66.     According to OFAC's Evidentiary Memorandum and the unclassified portions of the Administrative Record provided to Plaintiff on February 18, 2016, Plaintiff was designated because he is a "foreign person" who allegedly "is materially assisting in, or providing support for or to, or providing goods or services in support of, the international narcotics trafficking activities of LA OFICINA DE ENVIGADO . . . ."  FNK-3523 000001-02.  *See also* FNK-3523 000008.  The basis for Plaintiff's designation, however, was substantially redacted or deemed "not responsive" to his request to review the Administrative Record.  *See* FNK-3523 000008-000010.  Moreover, each of the exhibits that would have provided additional support for Plaintiff's SDN List designation was redacted in full.  *See* Exhibits 26-27; 31; 33-35.  OFAC's assessment of the evidence summarized in the Evidentiary Memorandum and relied upon to support its conclusion that Plaintiff be designated as an SDNTK – allegedly because he and others ". . . [were] members of, collaborat[ed] directly with, and/or receiv[ed] services in exchange for providing financial compensation to, LA OFICINA" – was unreasonable and

unsupported.  FNK-3523 000006.

67.    The remaining unredacted exhibits were general in nature, describing the history

of the Colombian drug trade after the fall of Pablo Escobar, the rise of La Oficina and Los

Urabenos, and the past and current structure and operatives of those criminal entities.  OFAC

provided no detailed information or other evidence directly related to Plaintiff.  None of the

unredacted Exhibits even mentions Plaintiff's name.  In conclusory fashion, the Administrative

Record's unclassified summary of "otherwise privileged information" stated that "[the Gallons]

are Colombian criminal financiers, money launderers, and narcotics traffickers who have both

supported and benefited from the criminal activities of La Oficina for many years.  [The Gallons]

are involved in La Oficina's drug trafficking, public corruption, and drug debt and extortion

collection activities."  FNK-3523 000124.  There is no specific evidence provided to Plaintiff in

the Administrative Record that supports the summary.

68.    Plaintiff, on the other hand, has repeatedly provided detailed responses to

OFAC's three questionnaires, has agreed to consider any remedial measures OFAC might offer,

and has requested a meeting between the parties' respective counsel to facilitate delisting from

the SDN List.

69.    Upon information and belief, OFAC has relied upon ex-leaders of La Oficina who

were extradited to the United States in or around 2008 to provide it with false information about

Plaintiff's ongoing support of narcotics traffickers in order to curry favor with law enforcement

authorities.  Since 2008 and continuing until the date of this Complaint, Plaintiff has had no

contact or relationship, whether financial, personal or otherwise, with such leaders, and has only

engaged in his legitimate businesses wholly separate and apart from any narcotics traffickers

warranting an OFAC designation as an SDNTK or SFNT.  Upon information and belief, to the

extent there existed information that could have warranted placement on the SDN List when the information was fresh, those facts and circumstances used to make the June 24, 2015 designation mostly predated 2008 and is now nearly a decade old and stale.

70.     Therefore, OFAC's June 24, 2015 designation of Plaintiff as an SDNTK, and his addition to the SDN List was the result of arbitrary and capricious agency action and/or an abuse of OFAC's discretion, not in accordance with law, and should be set aside by the Court.

**Count II - OFAC's failure to render a decision regarding Plaintiff's request for reconsideration is an arbitrary and capricious agency action, and/or an abuse of discretion and not in accordance with law, that must be set aside.**

71.     Plaintiff realleges and fully incorporates by reference the allegations contained in paragraphs 1-69 above.

72.     OFAC's failure to render a decision regarding whether to continue Plaintiff's designation as an SDNTK after the formal filing of his reconsideration request pursuant to 31 C.F.R. § 501.807 is a "failure to act" that constitutes a final agency action under 5 U.S.C. §§ 704, 706, and 551(13).

73.     The Court may hold unlawful and set aside agency action, findings, and conclusions found to be ". . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ."   5 U.S.C. § 706(2)(A).

74.     A reviewing court must compel agency action unlawfully withheld or unreasonably delayed.  *See id.* at § 706(1).

75.     As set forth above, according to OFAC's Evidentiary Memorandum and the unclassified portions of the Administrative Record provided to Plaintiff on February 18, 2016, Plaintiff was designated as an SDNTK because he is a "foreign person" who allegedly "is materially assisting in, or providing support for or to, or providing goods or services in support of, the international narcotics trafficking activities of LA OFICINA DE ENVIGADO . . . ."

FNK-3523 000001-02.  *See also* FNK-3523 000008.  The basis for Plaintiff's designation, however, was substantially redacted or deemed "not responsive" to his request to review the Administrative Record.  *See* FNK-3523 000008-000010.  Moreover, each of the exhibits that would have provided additional support for Plaintiff's SDNTK tag and SDN List designation was redacted in full.  *See* Exhibits 26-27; 31; 33-35.  Accordingly, OFAC's assessment of the evidence summarized in the Evidentiary Memorandum and relied upon to support its conclusion that Plaintiff be designated as an SDNTK – allegedly because he and others ". . . [were] members of, collaborat[ed] directly with, and/or receiv[ed] services in exchange for providing financial compensation to, LA OFICINA" – was unreasonable.  FNK-3523 000006.

76.     The remaining unredacted exhibits contained in the Administrative Record were general in nature, describing the history of the Colombian drug trade after the fall of Pablo Escobar, the rise of La Oficina and Los Urabenos, and the past and current structure and operatives of those criminal entities.  OFAC provided no detailed information or other evidence directly related to Plaintiff or specific to illegal or problematic behavior on the part of Plaintiff. None of the unredacted Exhibits even mentions Plaintiff's name.  In conclusory fashion, the Administrative Record's unclassified summary of "otherwise privileged information" stated that "[the Gallons] are Colombian criminal financiers, money launderers, and narcotics traffickers who have both supported and benefited from the criminal activities of La Oficina for many years. [The Gallons] are involved in La Oficina's drug trafficking, public corruption, and drug debt and extortion collection activities."  FNK-3523 000124.  There is no specific evidence provided to Plaintiff in the Administrative Record that supports the summary.

77.     Plaintiff, on the other hand, has repeatedly provided detailed responses to OFAC's three questionnaires, has agreed to consider any remedial measures OFAC might offer,

and has requested a meeting between the parties' respective counsel to facilitate delisting from the SDN List.

78.     Upon information and belief, OFAC has relied upon ex-leaders of La Oficina who were extradited to the United States in or around 2008 to provide it with false information about Plaintiff's ongoing support of narcotics traffickers in order to curry favor with law enforcement authorities.  Since 2008 and continuing until the date of this Complaint, Plaintiff has had no contact or relationship, whether financial, personal or otherwise, with such leaders, and has only engaged in his legitimate businesses wholly separate and apart from any narcotics traffickers warranting an OFAC designation as an SDNTK or SFNT.  Upon information and belief, to the extent there existed information that could have warranted placement on the SDN List when the information was fresh, those facts and circumstances used to make the June 24, 2015 designation mostly predated 2008 and is now nearly a decade old and stale.

79.     In the over two-year period since the June 24, 2015 designation of Plaintiff as an SDNTK and placement on the SDN List, Plaintiff has operated his legitimate business enterprises in Colombia, consisting primarily of livestock and cattle trades and his real estate business, without "materially [or immaterially] assisting in, or providing support for or to, or providing goods or services in support of, the international narcotics trafficking activities of LA OFICINA DE ENVIGADO* and/or LOS URABENOS* and/or foreign persons proposed for designation pursuant to the Kingpin Act."  *See* FNK-3523 000002.

80.     For these reasons, OFAC's failure to render a decision regarding whether to continue Plaintiff's designation as an SDNTK after the formal filing of his reconsideration request pursuant to 31 C.F.R. § 501.807 is tantamount to an arbitrary and capricious denial of his reconsideration request and/or an arbitrary and capricious failure to act and not in accordance

with law.  Accordingly, OFAC's agency action must be set aside by this Court.  *See id.* at §
706(1); (2)(A).

**Count III - OFAC's failure to provide any access to the redacted
portions of the Administrative Record deprived Plaintiff of sufficient
notice of the charges and evidence against him, was arbitrary
and capricious, and without observance of procedure required by law.**

81.     Plaintiff realleges and fully incorporates by reference the allegations contained in
paragraphs 1-79 above.

82.     The APA mandates that a reviewing court shall hold unlawful and set aside
agency action, findings, and conclusions found to be arbitrary and capricious, or not otherwise in
accordance with law, and/or without observance of procedure required by law.  *See* 5 U.S.C. §§
706(2)(A) and 706(2)(D).

83.     OFAC heavily redacted significant portions of the Administrative Record
provided to Plaintiff on February 18, 2016, including the Evidentiary Memorandum underlying
the designation of Plaintiff, and has never provided Plaintiff with any additional evidence
whatsoever.

84.     Markings within the Administrative Record appear to denote that OFAC based
such redactions on the contents' purported classified, privileged, or sensitive nature.

85.     Without disclosure of such information, Plaintiff is unable to understand the
allegations against him in order to meaningfully respond through OFAC's administrative
reconsideration process.

86.     OFAC has taken no measures to provide Plaintiff with the redacted information,
such as through the disclosure of unclassified summaries of the classified and/or privileged
portions of the Administrative Record that have been redacted.

87.     To the extent that OFAC's continuing failure to render a decision on Plaintiff's reconsideration request, which is tantamount to a denial of his request, is based upon any such redacted portions of the Administrative Record, OFAC continues to deprive Plaintiff of his right to sufficient notice.

88.     Therefore, OFAC's failure to provide sufficient notice by not providing any portion of the redacted portions of the Administrative Record, was and continues to be an arbitrary and capricious agency action, and without observance of procedure required by law, and should be held by this court as unlawful and set aside.

[The remainder of this page has been left blank intentionally.]

## **Relief Requested**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment for the

Plaintiff and against the Defendants:

(a) as to all Counts, a declaratory judgment that holds unlawful, and sets aside OFAC's actions, findings, and conclusions as arbitrary, capricious, and/or an abuse of discretion, or not in accordance with law, in violation of the Administrative Procedure Act;

(b) as to all Counts, a writ of mandamus requiring OFAC to set aside its actions, findings, and conclusions that are arbitrary, capricious, and/or an abuse of discretion, in violation of the Administrative Procedure Act;

(c) as to Count I, a declaratory judgment that holds unlawful, and sets aside OFAC's June 24, 2015 designation of Plaintiff as an SDNTK and his placement on the SDN List, as agency actions, findings, and conclusions that were arbitrary, capricious, and/or an abuse of discretion, or not in accordance with law, in violation of the Administrative Procedure Act;

(d) as to Count II, a declaratory judgment that holds unlawful, and sets aside OFAC's refusal and/or failure to make a decision regarding Plaintiff's request for reconsideration of the June 24, 2015 designation of Plaintiff as an SDNTK and his placement on the SDN List, as agency actions, findings, and conclusions that are and continue to be arbitrary, capricious, and/or an abuse of discretion, or not in accordance with law, in violation of the Administrative Procedure Act;

(e) as to Count III, a declaratory judgment that holds unlawful, and sets aside OFAC's failure to provide sufficient notice to Plaintiff, as arbitrary and capricious, and/or without observance of procedure required by law;

(f) as to Count III, a writ of mandamus requiring OFAC to disclose redacted portions of the Administrative Record, to the fullest extent required by law;

(g) as to Counts I and II, a writ of mandamus requiring OFAC to (i) rescind Plaintiff's designation as an SDNTK and (ii) remove Plaintiff from the SDN List;

(h) as to Counts I and II, an injunction vacating the designation of Plaintiff as an SDNTK or significant foreign narcotics trafficker;

(i) awarding Plaintiff, and directing Defendants to pay, Plaintiff's attorney's fees, costs and expenses incurred in this action; and

(j) granting to Plaintiff such other and further relief as the Court deems just and proper in the circumstances.

Respectfully submitted,

PEDRO DAVID GALLON HENAO,

By his counsel,

/s/  David Zapp
David Zapp DC District Court Bar Number NY0087
46 East 92nd Street, Suite #2
New York, NY  10128
Tel:    (212) 410-3351
Fax:    (917) 492-1879
Dated:  January 10, 2018            Email:  davidzapp@aol.com